**Ruth HALLMAN, Appellant,**

v.

**ALLSTATE INSURANCE COMPANY,**
**Appellee.**

No. 05–02–00962–CV.

Court of Appeals of Texas,
Dallas.

July 30, 2003.

Rehearing Overruled Sept. 17, 2003.

Erika Lea Blomquist, Haynes and Boone, L.L.P., Dallas, for Appellant.

Pamela J. Touchstone, and Roy L. Stacy, Calhoun & Stacy, PLLC, Dallas, for Appellee.

Before Justices JAMES, WRIGHT, and LANG.

## OPINION

Opinion by Justice WRIGHT.

Ruth Hallman appeals the trial court's summary judgment in favor of Allstate Insurance Company on the issues of duty to defend and the potential duty to indemnify. She also contends that she is entitled to reasonable and necessary attorney's fees incurred in defending against Allstate's claim for declaratory judgment and prosecuting her declaratory judgment claim against Allstate. Because we con-

clude the trial court's grant of summary judgment was improper, we reverse the trial court's judgment, render judgment on the coverage issue, and remand this case for further proceedings on the attorney's fees and costs issues.

## BACKGROUND

Hallman owns property in Kaufman County, Texas. In 1995, she leased her property to certain companies to mine for limestone. In 1996, neighboring property owners sued Hallman and others for damages related to blasting and transporting the stone. Hallman made a claim to Allstate under her homeowner's insurance policy, requesting that Allstate defend and indemnify her in the mining litigation. Allstate agreed to defend Hallman, but then filed suit seeking a declaration of its rights under the insurance policy and seeking attorney's fees. Hallman responded and filed a counterclaim for declaratory judgment on the defense and indemnity issues and for attorney's fees. Allstate moved for summary judgment, asserting that the allegations in the underlying lawsuit were not covered because those allegations did not state a claim for bodily injury or property damage caused by an "occurrence" as defined by the policy. Further, even if coverage were triggered, Allstate asserted coverage was barred by the "business pursuits" exclusion. Hallman filed a motion for partial summary judgment and for attorney's fees, contending that she was entitled to a defense because the allegations came within the policy's definition of "occurrence" as an "accident." The trial court granted Allstate's motion for summary judgment, denied Hallman's motion, and subsequently signed a final order denying the attorney's fees requests. On appeal, Hallman contends that the trial court erred in granting Allstate's motion for summary judgment and in denying her motion for summary judgment. According to Hallman, Allstate has a duty to defend her in the underlying litigation as a matter of law and requests a ruling that she is entitled to attorney's fees incurred in defending against Allstate's claim for declaratory judgment and in prosecuting her declaratory judgment claim.

## STANDARD OF REVIEW

■ The standard for reviewing a summary judgment is well established. *See Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). A party moving for summary judgment has the burden of showing no genuine issue of material fact exists and it is entitled to judgment as a matter of law. *See* Tex.R. Civ. P. 166a(c); *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex. 1972). A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex.1982). When both parties move for summary judgment and the trial court grants one motion and denies the other, we review the summary judgment evidence presented by both sides, determine all questions presented, and render such judgment as the trial court should have rendered. *Comm'rs Court v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997).

*Coverage*

*Applicable Law*

■ The duty to defend arises when a third party sues the insured on allegations that, if taken as true, potentially state a cause of action within the terms of the policy. *Houston Petroleum Co. v. Highlands Ins. Co.*, 830 S.W.2d 153, 155 (Tex.App.-Houston [1st Dist.] 1990, writ denied). The duty to defend the lawsuit is determined solely from the allegations and

the third party's complaints, in light of the policy provisions, and without reference to the truth or falsity of the allegations. *Am. Physicians Ins. Exch. v. Garcia,* 876 S.W.2d 842, 847–48 (Tex.1994); *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.,* 387 S.W.2d 22, 24 (Tex.1965). In construing the allegations of the underlying suit, the pleadings are strictly construed against the insurer, and any doubt is resolved in favor of coverage. *Pro–Tech Coatings, Inc. v. Union Standard Ins. Co.,* 897 S.W.2d 885, 887 (Tex.App.-Dallas 1995, no writ); *Cluett v. Med. Protective Co.,* 829 S.W.2d 822, 829 (Tex.App.-Dallas 1992, writ denied). In considering the allegations to determine whether a liability insurer is obligated under its policy to defend, a liberal interpretation of the meaning of those allegations should be indulged. *Heyden Newport Chem. Corp.,* 387 S.W.2d at 26.

▆▆▆ In construing the language of the insurance policy, if a policy is susceptible to more than one reasonable interpretation, the construction that most favors the insured must be adopted. *Nat'l Union Fire Ins. Co. v. Hudson Energy Co.,* 811 S.W.2d 552, 555 (Tex.1991). Exceptions or limitations to coverage are strictly construed against the insurer and in favor of the insured. The construction of an exclusionary clause urged by the insured must be adopted as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent. *Id.* Even if only one claim in a multiple-claim complaint potentially falls within the coverage of the policy, the insurer must defend the entire suit. *Pro–Tech Coatings, Inc.,* 897 S.W.2d at 891.

## Discussion

In its motion for summary judgment, Allstate argued that there was no coverage because the allegations in the underlying lawsuit did not state a claim for bodily injury or property damage that was caused by an occurrence within the meaning of the policy. Specifically, Allstate contended that there was no occurrence because Hallman voluntarily leased her property for limestone mining operations and the alleged injuries, including damage to land and buildings from blasting and personal injuries from dust, were the natural and probable consequences of Hallman's conduct.

Hallman responds that the alleged damages from the mining operations—blasting and dust—are not the natural and probable consequences of leasing one's property. Hallman argues that the allegations in the underlying suit state an occurrence because the plaintiffs alleged that, had Hallman's intentional act of leasing her property been performed non-negligently, the damages would not have resulted.

▆▆▆ The Allstate homeowner's policy provides that Allstate has a duty to defend Hallman against a suit alleging bodily injury or property damage caused by an occurrence. The policy defines "occurrence" as "an accident, including exposure to conditions, which results in 'bodily injury' or 'property damage' during the policy period." An accident has two elements: (1) an action, and (2) that action's effect, that is, the resulting damage. *Harken Exploration Co. v. Sphere Drake Ins. PLC,* 261 F.3d 466, 472 (5th Cir.2001). Two factors influence both elements: (1) intent or design, and (2) "expectability" or foreseeability. *Id.* There is not an accident when the action is intentionally taken and performed in such a manner that it is an intentional tort, regardless of whether the effect was unintended or unexpected. *Id.* (citing *Argonaut Southwest Ins. Co. v. Maupin,* 500 S.W.2d 633, 635 (Tex.1973)).

However, there is an accident when the action is intentionally taken but is performed negligently and the effect is not what would have been intended or expected had the deliberate action been performed non-negligently. *Id.* (citing *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 828 (Tex.1997), and *Mass. Bonding & Ins. Co. v. Orkin Exterminating Co.*, 416 S.W.2d 396, 400 (Tex.1967)).

■ The plaintiffs in the underlying lawsuit alleged that Hallman acted intentionally by leasing her property to the mining companies. They also alleged that Hallman knew or should have known that the mining companies failed to follow normal blasting procedures, damaging the neighbors' land and buildings, and failed to prevent dust from escaping into the atmosphere while the stone was transported from the pits, causing personal injury to the neighbors. They alleged that Hallman "should have prevented her property from being used in a manner that was harmful to Plaintiffs." Thus, the allegations are that Hallman negligently leased her property. The intentional act on Hallman's part was to lease her property for mining operations. The allegations are that the lease was performed negligently. But the effect of the lease, that is, the alleged damage to neighboring property from blasting and dust, was not the intended result had the lease been performed non-negligently.

Allstate relies on *Meridian Oil Production Inc. v. Hartford Accident & Indemnity Co.*, 27 F.3d 150, 151–52 (5th Cir.1994), and *Martin Marietta Materials Southwest, Ltd. v. St. Paul Guardian Insurance Co.*, 145 F.Supp.2d 794, 797–99 (N.D.Tex. 2001), to support its argument that no occurrence was stated. In *Meridian Oil Production, Inc.*, an oil and gas well operator drilled through an aquifer without adequate protection of the water, polluting the aquifer, and dumped contaminants onto sandy soil without an adequate lining, polluting the subsurface. The court found no occurrence because the damage was "a necessary companion event" to the operator's conduct. There, the operator's deliberate conduct inevitably and predictably caused the pollution, a result that an operator knows will occur. *Meridian Oil Prod., Inc.*, 27 F.3d at 151–52. Likewise, in *Martin Marietta Materials Southwest, Ltd.*, the intentional diversion of a river reduced the downstream flow, harming a downstream user, which was reasonably foreseeable. The diversion was intentional, and the natural and predictable result of diverting a river is a reduction of downstream waters, which could foreseeably harm downstream users. Therefore, there was no accident and no duty to defend. *Martin Marietta Materials Southwest, Ltd.*, 145 F.Supp.2d at 797–99. In those cases, the deliberate acts were knowing, even reckless, and the results were the natural and probable results of those acts. Here, there was no allegation that the damages to neighboring landowners from the mining operations were the inevitable and predictable results of Hallman leasing her property to the mining companies. We conclude that *Meridian Oil Production, Inc.* and *Martin Marietta Materials Southwest, Ltd.* do not support Allstate's argument that the allegations in the underlying lawsuit did not state an occurrence.

Hallman relies on *Harken Exploration Co.* to support her argument that an occurrence is stated. There, the plaintiffs alleged that an oil and gas operator negligently operated an oil facility on the plaintiffs' property, and the negligent operation caused the release of pollutants, killing livestock and vegetation. *Harken Exploration Co.*, 261 F.3d at 473. The court rejected the insurers' argument that dead

livestock and vegetation were the natural and probable consequences of operating an oil facility non-negligently. *Id.* at 474. The focus is on whether the effect is intended or expected, not whether the negligent performance is intended or expected. *Id.* Here, an occurrence is stated because the deliberately taken action, leasing Hallman's property, was allegedly performed negligently and the alleged damage to the neighbors' property and person was not the intended or expected result if the lease had been performed non-negligently. *See id.; Westchester Fire Ins. Co. v. Gulf Coast Rod, Reel & Gun Club,* 64 S.W.3d 609, 613 (Tex.App.-Houston [1st Dist.] 2001, no pet.) (allegations in underlying lawsuit stated an occurrence when deliberate action of dredging resulted in sand erosion on neighboring property; such property damage "was neither expected nor intended from the standpoint of [the defendant]" and "[t]here is nothing in the underlying plaintiffs' petition to indicate that [the defendant] intended to erode the sand from the plaintiffs' property"). Because the allegations in the underlying lawsuit state an occurrence within the policy's meaning, the trial court erred in granting summary judgment for Allstate on this ground.

■ Allstate moved for summary judgment on grounds that, even if the allegations stated an occurrence, coverage was barred by the "business pursuits" exclusion. Hallman responds that, by its own terms, the "business pursuits" exclusion does not apply to her claim.

■ The policy provides that coverage for personal liability does not apply to bodily injury or property damage arising out of or in connection with "a 'business' engaged in by an 'insured'" but "this exclusion does not apply to activities which are ordinarily incidental to non-business pursuits." The policy defines business as "trade, profession or occupation." The policy does not define these terms. If the language of the insurance contract is not ambiguous, that is, if it is not susceptible to more that one reasonable construction, we must give the words used their plain and ordinary meaning. *United Servs. Auto. Ass'n v. Pennington,* 810 S.W.2d 777, 779 (Tex.App.-San Antonio 1991, writ denied). A trade is the business practiced or work engaged in regularly for gainful employment, a livelihood. *Id.* An occupation is the principal business of one's life, a means of earning a living. *Id.* at 779–80. A profession is a calling that requires specialized knowledge and training, often in historical, scientific or scholarly principles, that are fundamental to the skills and methods needed. *Id.* at 780. The common thread among these definitions is "an activity which is regularly engaged in and the idea that a livelihood or means of earning a living is the motive for undertaking the activity." *Id.*

■ The petition in the underlying lawsuit alleges that Hallman entered into one lease agreement in 1995 regarding the mining operations. The petition does not allege that Hallman regularly engaged in leasing her property as her livelihood or means of earning her living, that Hallman's principal business was leasing property, or that Hallman had specialized knowledge or training in leasing property. Thus, we cannot conclude, by construing the language of the policy and the petition, that the petition alleges facts that come within the definition of the "business pursuits" exclusion. Nevertheless, Allstate points to Hallman's deposition and the lease as evidence that the "business pursuits" exclusion bars coverage. An insurer's contractual duty to defend must be determined solely from the face of the pleadings, without reference to any facts outside the pleadings. *Houston Petro-*

*leum Co.,* 830 S.W.2d at 155. Therefore, we do not consider evidence outside the pleadings to determine this issue. Because the "business pursuits" exclusion does not apply to the allegations in the underlying lawsuit, the trial court erred in granting summary judgment for Allstate on this ground.

■ Because the allegations in the underlying lawsuit state an occurrence within the policy's definition and the "business pursuits" exclusion does not apply, we conclude that the petition in the underlying lawsuit includes a claim that has the potential to lead to a covered loss.[1] Therefore, the trial court improperly granted summary judgment and denied Hallman's motion for summary judgment on Allstate's duty to defend and the potential duty to indemnify. Accordingly, we reverse the judgment and render judgment in Hallman's favor as to those issues.

*Attorney's Fees*

■ In her prayer for relief, Hallman requests reasonable and necessary attorney's fees. She requested attorney's fees pursuant to section 37.009 in her request for declaratory judgment. *See* Tex. Civ. Prac. & Rem.Code Ann. § 37.009 (Vernon 1997) (in declaratory judgment proceeding, trial court may award costs and reasonable and necessary attorney's fees as are equitable and just). Although she sought judgment on attorney's fees in her motion for summary judgment, she did not support that ground with evidence. The trial court denied her motion. Allstate did not move for summary judgment on its claim for attorney's fees. In response to this

Court's question on disposition of Allstate's request for attorney's fees, the trial court signed a final judgment denying both parties' requests for attorney's fees. The record does not show that the trial court heard any evidence as to attorney's fees when it signed the final judgment. Because Hallman is now the prevailing party and in light of the undeveloped record as to attorney's fees, we reverse the trial court's final judgment denying each parties' request for attorney's fees and remand this case for further proceedings on that issue. *Cf. Farmers Tex. County Mut. Ins. Co. v. Griffin,* 868 S.W.2d 861, 870 (Tex.App.-Dallas 1993, writ denied) (declining to consider or remand request for attorney's fees for party prevailing on appeal because party did not specifically invoke attorney's fees provision of declaratory judgments act or present point of error attacking denial of its attorney's fees); *see* Tex.R.App. P. 43.3(a) (providing appellate court, when reversing, must render judgment trial court should have rendered except when remand is necessary for further proceedings).

## CONCLUSION

Because we conclude the trial court's grant of summary judgment was improper, we reverse that part of the trial court's judgment denying Hallman's partial motion for summary judgment and granting Allstate's motion for summary judgment and render judgment in Hallman's favor on the coverage issue. Because we conclude that the issue of attorney's fees requires further proceedings, we reverse

1. Allstate contends that the trial court properly held that no coverage is afforded under the homeowner's policy because other types of policies such as commercial general liability policies, not homeowner's insurance, is intended to afford coverage for an insured's commercial enterprises. However, we need not address this contention because it was not urged in either motion for summary judgment. *See McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 341 (Tex.1993) (motion for summary judgment must "stand or fall on the grounds expressly presented in the motion").

that part of the trial court's final judgment denying the parties's requests for attorney's fees and remand this case for further proceedings on that issue.